IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| W.H., by and through his parents and next friends, ADAM HUNT and MARY HUNT,<br><br>    Plaintiff,<br><br>v.<br><br>[1] CANADIAN VALLEY TECHNOLOGY CENTER DISTRICT NO. 6;<br><br>[2] BAMBI SLIMP, in her individual capacity; and<br><br>[3] JOHN/JANE DOES I-X, in their individual capacities,<br><br>    Defendants. | Case No. CIV-24-351-D |

## ORDER

Before the Court is Defendants' Motion to Dismiss Complaint [Doc. No. 9]. The Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Plaintiff's complaint [Doc. No. 1] alleges Defendant Canadian Valley Technology Center District No. 6 (the "District"), a political subdivision of the State of Oklahoma, operated the Child Development Centers at the El Reno campus ("CDC") in April 2022. CDC, in turn, employed supervisor Defendant Bambi Slimp ("Slimp") and Defendant employee(s) John/Jane Does I-X ("Doe Defendants"). *Id.*

Plaintiff's complaint alleges the following facts. On April 8, 2022, Plaintiff (or "W.H.") was an 11-month-old infant enrolled in the District's Early Care and Education

Program. At some point that day, Doe Defendants placed W.H. in a highchair situated adjacent and level to a countertop. Doe Defendants also heated water in a crockpot located on the countertop to warm the children's bottles—a common practice at the time.

W.H., an infant, inadvertently grabbed the edge of the crockpot and toppled scalding water onto his lap. He was then transported to Integris Baptist Burn Center by ambulance where his parents, Mary and Adam Hunt (the "Hunts") were informed he sustained second- and third-degree burns covering more than 30% of his body. In addition to needing more than six months of recovery time, the Hunts were later informed W.H. would likely require plastic surgery to fully recover from his injuries.

Slimp met with the Hunts after the incident, apologized, and stated that the District's insurance carrier would provide for W.H.'s medical expenses. Plaintiff now alleges payments have since stopped despite W.H.'s ongoing need for care.

Plaintiff brings three causes of action under 42 U.S.C. § 1983. All three counts rely on a theory that Defendants demonstrated conscience-shocking deliberate indifference to Plaintiff's right to bodily autonomy as protected by the Due Process Clause of the Fourteenth Amendment. Count I alleges Doe Defendants were directly liable for their conduct. Doc. No. 1 at ¶¶ 38-50. Count II alleges Slimp is liable in her individual capacity based on a failure to adopt adequate safety policies or train/supervise her subordinates. *Id.* at ¶¶ 51-64. Count III alleges the District enacted inadequate policies and procedures regarding an obvious or known risk. *Id.* at ¶¶ 65-78.

In the instant Motion, Defendants argue Plaintiff failed to allege a constitutional deprivation pursuant to § 1983. Defendants further argue individual defendants Slimp and

John/Jane Does I-X are protected by qualified immunity.

For the reasons that follow, the Court agrees with Defendants and dismisses the complaint.

## STANDARD OF DECISION

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When ruling on a motion to dismiss, the Court must "liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). The normal tenet whereby a court must accept as true all of the allegations contained in the complaint is, however, "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

To allege a claim against the District, Plaintiff is required to show: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Meyers v. Okla. Cnty. Bd. Of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (internal quotation marks omitted). To state a claim for supervisory liability against Slimp, Plaintiff must establish (1) a constitutional violation by the supervisor's subordinates and (2) an "affirmative link" between the supervisor and the underlying constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195-1197 (10th Cir. 2010). To state a claim against Doe Defendants,

Plaintiff must allege they committed a constitutional violation while acting under color of state law. *Id.* All claims therefore rise or fall on Plaintiff's capacity to allege a constitutional violation under § 1983.

**ANALYSIS**

1. *42 U.S.C. § 1983*

Section 1983 imposes liability on any person acting under color of state law who "subjects, or causes to be subjected," any other person to the deprivation of constitutionally protected rights. 42 U.S.C. § 1983. Under the Due Process Clause of the Fourteenth Amendment, a constitutionally cognizable level of executive abuse occurs when, absent a custodial relationship, the government engages "in conduct that 'shocks the conscience.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)); *accord Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 914 (10th Cir. 2012).

The shock-the-conscience test does not duplicate "traditional category[ies] of common-law fault." *Lewis*, 523 U.S. at 847. The Fourteenth Amendment should therefore not be considered a "font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 348 (1986). Instead, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id*; *accord Monell v. Dept. of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor[.]").

To shock the conscience, an intent or purpose to cause harm is generally required.

4

*Id.* at 853. That being said, a "midlevel fault" based on deliberate indifference applies where officials have the luxury "to make unhurried judgments[.]" *Id*; *accord Graves v. Thomas*, 450 F.3d 1215, 1221 (10th Cir. 2006) ("'when actual deliberation is practical,' we will employ a 'deliberate indifference' standard") (quoting *Lewis*, 523 U.S. at 851). Here, deliberation was practical. The deliberate indifference standard is therefore appropriate.

Determining whether a defendant's conduct demonstrates conscience-shocking deliberate indifference is a fact intensive inquiry. *See Sherwood v. Oklahoma County*, 42 F. Appx. 353, 358 (10th Cir. 2002). A plaintiff "must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power…the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).

An example of such behavior occurred in *Sherwood*, 42 Fed. Appx. 353. There, defendants, the county sheriff and county, ordered the plaintiff to supervise inmates who were painting vehicles using hazardous paint in a make-shift booth that was not equipped with ventilation. *Id.* at 358. The defendants threatened to fire the plaintiff if he did not comply even though it was clear that the defendants "were notified of the potential serious health hazards associated with the [painting] process and type of paint being used." *Id.* at 355. The Tenth Circuit held that the plaintiff "pled facts which [were] sufficient to allow the question of [d]efendants' conduct to go before a jury." *Id.* at 359.

Here, defendants' actions, as alleged in Plaintiff's complaint, are dissimilar. Unlike in *Sherwood*, the complaint does not assert that any Defendant was informed about past

5

incidents involving the crockpot such that the employees knowingly disregarded an obvious risk. While the situation was tragic, and may have even been negligent, negligent actions are categorically beneath the threshold of constitutional due process.

Plaintiff urges the Court to consider W.H.'s unique vulnerabilities as an 11-month-old who, unlike the plaintiff in *Sherwood*, was incapable of warning others about an obvious risk to his safety.

Although the Court is mindful of such differences, the threshold for conscience-shocking deliberate indifference is high and requires, at a minimum, deliberate and reckless conduct. As the Tenth Circuit has made clear, a reckless act "reflects a wanton or obdurate disregard or complete indifference to [a] risk," that was either known or obvious and the actor "proceeded in *conscious* and unreasonable disregard of the consequences." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1238 (10th Cir. 1999) (emphasis added) (internal quotation marks omitted). Without previous incidents giving rise to subjective knowledge of the obvious risk, Plaintiff has alleged conduct sounding in tort law alone.

Plaintiff relies on *Armijo By & Through Chavez v. Wagon Mount Pub. Sch.*, 159 F.3d 1253 (10th Cir. 1998). There, school officials suspended a student and left him at home even though the officials knew that the student was distraught and potentially had access to firearms. *Id.* 1256-58. The student was later found to have died by suicide from a self-inflicted gunshot wound. *Id.* The Tenth Circuit affirmed the district court's judgment that a question of fact existed as to whether defendants acted with conscience-shocking disregard to the student's safety by creating the danger involved. *Id.* at 1265.

*Armijo* is distinguishable for at least two reasons. First, the Tenth Circuit relied on

6

the so-called "state-created danger" theory of Substantive Due Process (*id.* at 1263-64), and Plaintiff concedes in his brief that that theory is inapplicable here [Res. at 3n.2]. The second reason is that, even if the state-created danger theory did apply, the Tenth Circuit made clear that the scienter by which a state actor shocks the conscience under that theory requires placing a plaintiff in substantial risk of proximate harm with "culpable knowledge." *Id.* at 1263 (internal quotation marks omitted). For the same reason as stated above, Plaintiff does not allege facts demonstrating Defendants gained culpable knowledge of the risk prior to April 8, 2022.

Plaintiff also relies on *Sutton*, 173 F.3d 1226. There, a disabled student experiencing cerebral palsy, blindness, and the inability to speak, used sign language to tell his mother that he had been molested by a larger boy at school. *Id.* at 1230. The mother notified the school, which responded by informing the mother that the alleged abuse could not have occurred because the school constantly supervised the children. *Id.* The boy later told his mother that he had been molested again. *Id.* Days later, it was discovered that the teacher responsible for supervising the child had left to take a phone call, at which point another assault occurred. *Id.* In holding the complaint was sufficient to state a claim under § 1983, the Tenth Circuit stated the "repeated notification to [the principal that the boy] …had been subjected to repeated sexual assaults" created a viable claim that would "shock the conscience of federal judges." *Id.* at 1241 (quotation marks omitted).

Although *Sutton* and the instant case are similar in as much as both plaintiffs possess relevant vulnerabilities, that is where the similarities end. *Sutton* is distinguishable because the school exhibited conscience-shocking deliberate indifference by ignoring prior notice

7

of the repeated abuses. The same is not true here.

Plaintiff lastly argues Defendants' actions, as alleged, amount to more than an isolated incidence of negligence. According to the complaint, Defendants enacted inadequate policies and procedures, failed to train staff, and maintained a persistently dangerous practice, thereby demonstrating deliberate indifference. As already described, however, demonstrating conscience-shocking deliberate indifference is a high bar.

*DeAnzona v. City & Cnty. of Denver*, 222 F.3d 1229 (10th Cir. 2000) is instructive. There, the Tenth Circuit addressed whether the state had demonstrated conscience-shocking deliberate indifference by, under the danger-creation theory, failing to supervise a five-year-old boy who attended a park district camp, wandered into a lake, and drowned. *Id.* at 1233. While Plaintiff here alleges more than the mere failure to supervise, the Tenth Circuit's reasoning is still instructive. It wrote, "Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *Id.* at 1235. So too here, the facts as alleged do not rise to the level required to shock the judicial conscience.

Having failed to allege facts sufficient to state a claim under § 1983, Plaintiff's claims against Defendants must be dismissed.

2. *Qualified Immunity*

Even if Plaintiff had alleged a constitutional violation, the Court finds an alternate basis for dismissing Plaintiff's claims against individual Defendants based on qualified immunity.

Qualified immunity applies to state actors who commit wrongful or illegal acts

unless the defendant "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012). For a right to be clearly established, there ordinarily must "be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009) (internal quotation marks omitted). The standard should not be applied "too literally" but instead requires only a "reasonable application of existing law to [a defendant's] own circumstances." *Rachamin v. Ortiz*, 147 Fed. Appx. 731, 734 (10th Cir. 2005).

Plaintiff argues the alleged constitutional right at issue was clearly established because (1), per *Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009), deliberately indifferent conduct may shock the conscience in nonemergent situations, and (2), per *Armijo*, 159 F.3d at 1264, knowledge of a "student's vulnerabilities and risks of being left alone at home…" require considering fact-specific vulnerabilities.

Plaintiff is correct at an overly general level. Plaintiff neglects to cite the additional requirement that deliberate indifference requires conscious or culpable knowledge. That additional requirement is both necessary and unmet here. Without a Supreme Court or Tenth Circuit case clearly establishing a constitutional right to nonnegligent care for an infant enrolled in a childcare program, individual Defendants enjoy qualified immunity.

**IT IS THEREFORE ORDERED** that Plaintiff's action is dismissed without prejudice. A separate judgment of dismissal shall be entered.

**IT IS SO ORDERED** this 14th day of November, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge